UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ASHLEY N. THILL,

    Plaintiff,                                                                              CASE NO.: 9:19-cv-81713-RS

vs.

AMERICAN METAL FABRICATORS, INC.,
d/b/a AMF BUILDING PRODUCTS

    Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiff, ASHLEY N. THILL (hereinafter "THILL"), by and through the undersigned Counsel, and sues the Defendant, AMERICAN METAL FABRICATORS, INC. d/b/a AMF BUILDING PRODUCTS (hereinafter "AMF"), and alleges the following:

## JURISDICTION AND VENUE

1. This is a civil action with damages that exceed Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

2. This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367.

3. Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b) because all actions relevant giving rise to this claim arose in this Judicial Circuit.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to the maintenance of this action have been met.

5. On or about October 20, 2020, THILL timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC"). A copy of said Charge is attached hereto as ***Exhibit "A."***

6. More than 180 days have passed since THILL filed her Charge of Discrimination with the Palm Beach County OEO and the EEOC.

7. On or about April 28, 2021, the Palm Beach County OEO issued a Notice of Dismissal because THILL requested a Notice of Right to Sue from the EEOC. A copy of said Notice of Dismissal is attached hereto as ***Exhibit "B."***

8. On or about May 19, 2021, the EEOC issued a Notice of Right to Sue, acknowledging that more than 180 days had passed since THILL's filing of her Charge. A copy of said Notice of Right to Sue is attached hereto as ***Exhibit "C."***

9. THILL filed her initial Complaint against AMF within ninety (90) days of receipt of the May 19, 2021 Notice of Right to Sue.

## PARTIES

10. THILL is a female who resided in St. Lucie County, Florida, during the time of her employment with AMF.

11. At all times material, AMF was and is a company that manufactures and sells residential and commercial aluminum storm panels, railing systems, and glass building products with more than fifteen (15) employees.

12. At all times material, AMF was and is managed by company President David Zajac.

13. At all times material, AMF's primary place of business was and is at 1501 53rd Street, West Palm Beach, Florida 33407.

14. At all times material, AMF was and is duly authorized and licensed to do business in Palm Beach County, Florida.

15. THILL was employed as an Administrative Assistant by AMF on a continuous basis from on or about November 2016 through August 3, 2020.

16. In her capacity as Administrative Assistant, THILL was responsible for handling all reception duties.

17. Throughout her almost four (4) years of employment with AMF, THILL was routinely assigned more job duties and responsibilities.

18. At the time of her employment termination, THILL's job duties involved the purchasing of metal supplies, the keeping track of inventory, and the handling of both accounts payable and accounts receivable, in addition to her administrative assistant/reception duties.

19. THILL's direct supervisor was Robert Kinni, the Chief Financial Officer and Human Resources Director who worked out of the same West Palm Beach office.

20. Throughout her almost four (4) years of employment with AMF, THILL never received any disciplinary warnings.

21. THILL was qualified to work as an Administrative Assistant for AMF, and she excelled at her position.

22. THILL was and is a member of a group protected under Title VII and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 ("FCRA")'s prohibitions against gender discrimination, hostile work environment, and retaliation namely:

   a. She is a female;

      b. She was subjected to a hostile work environment as a result her gender; and

      c. She suffered an adverse employment action shortly after making complaints regarding the discriminatory treatment she was experiencing in the workplace.

23. At all times material, AMF was and is an "employer" as defined by Title VII.

24. At all times material, AMF was and is an "employer" as defined by the FCRA.

## FACTUAL ALLEGATIONS

25. Within the first few weeks of her employment with AMF, THILL noticed an atmosphere of male preference and male dominance in the workplace.

26. At all times material herein, AMF's highest-ranking executives were male.

27. Throughout the entirety of her employment with AMF, AMF's male executives showed an attitude of superiority toward THILL because she was not a man.

28. AMF promoted a policy of hiring only men and rarely hiring women.

29. When THILL began working with AMF, she was the only female employee in a company of approximately twenty-five (25) employees.

30. Upon information and belief, AMF granted certain benefits to male employees who were at a similar level of professional hierarchy as THILL but denied those same benefits to THILL.

31. THILL was not given raises or bonuses at the same rates as her male colleagues, like Matthew Brown and Jason Brown, despite the frequent addition of duties and responsibilities to her job and despite the fact that she worked on the same projects as these male colleagues.

32. THILL was routinely passed up for promotions that were awarded to her male coworkers, like David Zajac-Santana, Jr.

33. AMF denied THILL the financial opportunity to be a salaried employee instead of an hourly employee allegedly because the company had a rule that only employees who supervised others (i.e. must have people working underneath his or her position) were eligible for the salaried status, but in reality male coworkers David Zajac-Santana, Jr., and Matthew Brown were granted the salaried status when they did not have any supervisory roles.

34. Male employees David Zajac-Santana, Jr., and Matthew Brown were paid a salary.

35. Male employees David Zajac-Santana, Jr., and Matthew Brown did not have other employees working underneath their positions.

36. AMF denied THILL the most basic improvements to her workspace, such as a new desk when hers broke and the drawers stopped functioning, allegedly because the purchasing of a new desk was not in the company's budget.

37. However, when male coworker Matthew Brown asked for a new desk because his was too small, AMF immediately approved and paid for his replacement desk, while THILL continued to work at a desk that was falling apart.

38. AMF allowed only male employees to participate in company meetings involving discussions of purchasing supplies and inventory, thereby excluding THILL from information necessary to her job, as the purchasing of supplies and the tracking of inventory were both job duties assigned to THILL.

39. THILL's direct supervisor Robert Kinni and other male employees engaged in inappropriate mocking of THILL for her weight and physical appearance. Specifically:

   a. After being given the responsibility of handling accounts payable and accounts receivables, THILL requested that she be moved away from the office's front desk to a different seating arrangement to keep financial documents more private, but

      this request was denied, and Mr. Kinni required THILL to stay seated at the front desk because "[Mr. Zajac] wants a pretty face up front."

  b. While THILL was eating, Mr. Kinni stated: "I see you got your appetite back," as a direct reference to her weight.

  c. On June 27, 2019, Mr. Kinni called THILL into his office when meeting with the company president.  Mr. Zajac jokingly warned: "Watch out; Bob set a trap for you." Mr. Zajac pointed to a scale on the floor, and Mr. Kinni stated: "I can guess her weight within 1 point." Mr. Zajac smiled and replied: "But you're not going to do that right?"  Then Mr. Kinni said: "No, I'm not going to say she weighs 146 pounds."  Both men burst out laughing, with THILL standing speechless.

  d. On November 14, 2019, Mr. Kinni asked THILL: "How much do you weigh now?" After months of not defending herself from the jokes about her weight and physical appearance, THILL firmly responded to Mr. Kinni that he should not speak to her or to any employees this way, especially when he is responsible for the company's Human Resources.  Mr. Kinni just laughed and responded, "Oh come on; that's not bad to say."

  e. On July 30, 2020, THILL was snacking on some peanuts while working at her desk when Mr. Kinni walked over to her desk and exclaimed to her in disgust: "You are always eating!"  The comment was overheard by coworker Jason Brown, who appeared paralyzed by Mr. Kinni's comment.

40. Mr. Kinni and AMF's male executives never discussed the weight or physical appearance of THILL's male coworkers.

41. Throughout her employment with AMF, Mr. Kinni routinely threw papers and folders at THILL while she was seated at her desk.

42. Mr. Kinni did not throw papers and folders at THILL's male coworkers while these male coworkers were seated at their desks.

43. On multiple occasions, while discussing distributions of work at the office, Mr. Kinni would raise his voice and scream aggressively at THILL.

44. On multiple occasions, THILL asked Mr. Kinni to stop screaming at her and to treat her respectfully.

45. THILL never raised her voice or screamed at Mr. Kinni, but he continuously barked orders at her.

46. Mr. Kinni did not scream aggressively at THILL's male coworkers while discussing work matters.

47. On multiple occasions, Mr. Kinni relieved himself in the women-only bathroom that had only one stall.

48. On multiple occasions, THILL witnessed Mr. Kinni relieve himself in the women-only bathroom that had only one stall.

49. As the only woman working at AMF, THILL felt uncomfortable to find her male supervisor in the woman's bathroom.

50. THILL respectfully asked Mr. Kinni to stop using the woman's bathroom, but Mr. Kinni refused.

51. THILL felt physically threatened by Mr. Kinni, who, on more than one occasion, bragged about owning a serious weapon.

52. On February 1, 2019, Mr. Kinni was verbally bragging about his gun to another male employee, Wilfredo Rivera, when he retrieved his gun from his truck and brought it back to the office.

53. On February 1, 2019, Mr. Kinni laid his gun on THILL's desk with the barrel pointed toward her face.

54. Prior to the February 1, 2019 incident with Mr. Kinni's gun, THILL had reported to Mr. Kinni that she was concerned about a weapon in the workplace, but evidently her concerns were ignored.

55. Rather than stand up to the degrading treatment toward THILL, THILL's male colleagues started to follow their supervisor's lead and behave rudely towards THILL. The work environment became so hostile that days would go by before a coworker would speak to THILL.

56. During THILL's employment with AMF, AMF hired one other female employee, Roushan Muhammad.

57. From the start of Roushan Muhammad's employment, Mr. Kinni expressed to THILL that he "fucking hate[d] her."

58. Mr. Kinni's behavior toward women was so aggressive that he stated to THILL: "I swear to God I'll fucking kill [Roushan Muhammad]."

59. On or about May 22, 2019, Mr. Kinni offered to pay THILL first $200.00 and later $2,000.00 to start a physical altercation with Roushan Muhammad. THILL refused to engage in any physical actions.

60. Roushan Muhammad resigned from her position at AMF.

61. On August 3, 2020, Mr. Kinni verbally attacked THILL in the front lobby of AMF.

62. On August 3, 2020, THILL entered the office of company President David Zajac and tendered her resignation, citing Mr. Kinni's verbal abuse and AMF's demeaning treatment of her as the reasons for her resignation.

63. On August 3, 2020, Mr. Kinni overheard THILL's conversation with Mr. Zajac and immediately became aggressive.  Mr. Kinni rushed into Mr. Zajac's office and loudly demanded: "Good!  Get the fuck out of here.  What are you still doing here?!"

64. Upon information and belief, Mr. Kinni behaved in demeaning and/or aggressive ways toward THILL because she was female.

65. Mr. Kinni never behaved in demeaning and/or aggressive ways with THILL's male counterparts.

66. THILL was forced to leave her job in the middle of a global pandemic, giving up her pay, health insurance, life insurance, dental insurance, and vision insurance, all while having to support a household and provide for her three children.

67. Upon information and belief, THILL was constructively discharged from her employment due to gender discrimination, retaliatory treatment, and a hostile work environment.

68. The level of harassment, discrimination, and hostility in the workplace were so severe that THILL had to seek mental health counseling, and per the recommendations of her treating physician, she was placed on depression and anxiety medications.

### COUNT I – VIOLATION OF TITLE VII – GENDER DISCRIMINATION

69. Plaintiff THILL incorporates the allegations contained in Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex [i.e. gender], or national origin." 42 U.S.C. § 2000e et seq.

71. AMF is an "employer" as defined by Title VII.

72. THILL is a member of a protected class of female citizens.

73. At all times necessary, THILL was qualified to perform her duties as an Administrative Assistant.

74. From the beginning of her employment with AMF, THILL was subjected to a discriminatory, hostile, and offensive work environment because of her gender.

75. AMF's discriminatory, hostile, and offensive work environment, as detailed in the above paragraphs of this Complaint, was offensive to THILL and would be offensive to a reasonable person.

76. THILL's male counterparts were not subjected to a discriminatory, hostile, and offensive work environment.

77. Upon information and belief, AMF treated similarly situated male employees more favorably than they treated THILL, including but not limited to payment of salaries, raises, and bonuses, participation in company meetings, commentary on weight and physical appearance, use of appropriate bathrooms, aggressive and combative behavior, and threats of violence through weapons in the workplace.

78. On August 3, 2020, THILL was constructive discharged, having been left with no choice but to resign from her employment because of her gender, in violation of Title VII.

79. As a direct and proximate result of the foregoing, THILL has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

80. THILL has suffered damages of an on-going and continuous nature.

81. THILL has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause.

## COUNT II – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT – GENDER DISCRIMINATION

82. Plaintiff THILL incorporates the allegations contained in Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

83. The FCRA, Fla. Stat. Chapter 760.10(1)(a), reads in applicable part, as follows: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

84. AMF is an "employer" as defined by § 760.09(7) of the Florida Statutes.

85. THILL is a member of a protected class of female citizens who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

86. Throughout her employment with AMF, and at the time of her constructive discharge, THILL was a qualified Administrative Assistant.

87. AMF's discriminatory, hostile, and offensive work environment, as detailed in the above paragraphs of this Complaint, was offensive to THILL and would be offensive to a reasonable person.

88. THILL's male counterparts were not subjected to a discriminatory, hostile, and offensive work environment, like she was.

11

89. Upon information and belief, AMF treated similarly situated male employees more favorably than they treated THILL, including but not limited to treatment in company meetings, payment of salary, raises, and bonuses, promotions, aggressive and violent behavior, and comments on weight and physical appearance.

90. On August 3, 2020, THILL was constructively discharged from her employment because of her gender.

91. AMF violated the FCRA when it created an environment so hostile due to THILL's gender as female as to force THILL to resign.

92. AMF's actions were malicious and were recklessly indifferent to THILL's rights pursuant to Fla. Stat. § 760.10.

93. As a direct and proximate result of the foregoing, THILL has suffered and continues to suffer embarrassment, humiliation, emotional distress, and other forms of damage.

94. THILL has suffered damages of an on-going and continuous nature.

95. THILL has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause.

## COUNT III – RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

96. Plaintiff THILL incorporates the allegations contained in Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

97. The FCRA, Fla. Stat. Chapter 760.10(1)(a), reads in applicable part, as follows: "It is an unlawful employment practice for an employer: (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

98.  The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

99.  AMF is an "employer" as defined by § 760.09(7) of the Florida Statutes.

100.  At the time of her discharge, THILL was a female who was guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

101.  THILL engaged in a statutorily protected expression, namely she expressed her concerns with her discriminatory treatment through complaints—the first on July 11, 2019 where THILL expressed concern over being assigned additional job duties while her male counterpart was not, and the second on November 14, 2019 where THILL complained about the inappropriate comments being made about her weight by AMF's Chief Financial Officer and Director of Human Resources. THILL continued to express her discomfort with the discriminatory comments and treatment made in and around the office throughout her employment.

102.  On August 3, 2020, THILL was constructively discharged from her employment with AMF.

103.  A causal connection exists between THILL's complaints of discrimination and harassment, i.e. her statutorily protected expression, and her adverse employment action, namely her constructive discharge.

104.  AMF violated the FCRA when it failed to adequately address THILL's concerns of discriminatory treatment in the workplace and instead continued to foster such a hostile work

environment through retaliatory actions and gender discrimination, leading to THILL's constructive discharge.

105. As a direct and proximate result of AMF's conduct and its employees' actions, THILL has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, dental insurance, and vision insurance, all of which she would have continued to receive had she not been unlawfully and constructively discharged.

106. What is more, the unlawful employment practices complained of above committed by AMF were willful, wanton, intentional and with malice or with reckless indifference to THILL's statutorily protected rights, such that THILL is entitled to punitive damages.

107. THILL has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause.

## COUNT IV – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1965, AS AMENDED

108. Plaintiff THILL incorporates the allegations contained in Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

109. Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex [i.e. gender], or national origin." 42 U.S.C. § 2000e et seq.

110. Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he

14

has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 et seq.

111. AMF is an "employer" as defined by Title VII.

112. THILL is a female who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

113. THILL engaged in a statutorily protected expression, namely she expressed her concerns with her discriminatory treatment through complaints—the first on July 11, 2019 where THILL expressed concern over being assigned additional job duties while her male counterpart was not, and the second on November 14, 2019 where THILL complained about the inappropriate comments being made about her weight by AMF's Chief Financial Officer and Director of Human Resources. THILL continued to express her discomfort with the discriminatory comments and treatment made in and around the office throughout her employment.

114. On August 3, 2020, THILL was constructively discharged from her employment with AMF.

115. A causal connection exists between THILL's complaints of discrimination and harassment, i.e. her statutorily protected expression, and her adverse employment action, namely her constructive discharge.

116. AMF violated Title VII when it failed to adequately address THILL's concerns of discriminatory treatment in the workplace and instead continued to foster such a hostile work environment through retaliatory actions and gender discrimination, leading to THILL's constructive discharge.

117. As a direct and proximate result of AMF's conduct and its employees' actions, THILL has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, vision, and dental insurance, all of which she would have continued to receive had she not been unlawfully and constructively discharged.

118. What is more, the unlawful employment practices complained of above committed by AMF were willful, wanton, intentional and with malice or with reckless indifference to THILL's statutorily protected rights, such that THILL is entitled to punitive damages.

119. THILL has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause.

**COUNT V - HOSTILE WORK ENVIRONMENT BASED ON GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1965, AS AMENDED**

120. Plaintiff THILL incorporates the allegations contained in Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

121. A hostile work environment exists, in violation of 42 U.S.C. Sect. 2000(e), et seq., when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

122. THILL is a female who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

123. AMF and its management level employees subjected THILL to unwelcome harassment because of her gender from the beginning of her employment through and including her constructive discharge.

124. The harassment that AMF inflicted upon THILL was sufficiently severe and pervasive to alter the terms and conditions of her employment with AMF and create a discriminatorily abusive working environment, such that THILL felt physically threatened.

125. The conduct inflicted upon THILL was so severe or pervasive that it created an environment where a reasonable person would find it hostile or abusive.

126. THILL perceived the work environment at AMF as abusive.

127. The harassment occurred frequently, was humiliating, and unreasonably interfered with THILL's ability to perform her job as an Administrative Assistant.

128. AMF is liable because its supervisory personnel was responsible for the discriminatory actions complained of, which actions were in violation of law, and AMF took no corrective action to stop and/or prevent said harassment.

129. As a direct and proximate result of AMF's conduct and its employees' actions, THILL has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, vision insurance and dental insurance, all of which she would have continued to receive had she not been unlawfully terminated.

130. THILL has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII and is required to pay her attorney a reasonable fee for services rendered in this cause.

## COUNT VI - HOSTILE WORK ENVIRONMENT BASED ON GENDER IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

131. Plaintiff THILL incorporates the allegations contained in Paragraphs 1 through 68 of this Complaint as if fully set forth herein.

132. A claim arising from the FCRA is analyzed under the same laws applicable to Title VII claims.

133. A hostile work environment exists, in violation of Fla. Stat. Chapter 760.10(1)(a), when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

134. THILL is a female who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

135. AMF and its management level employees subjected THILL to unwelcome harassment because of her gender from the beginning of her employment through and including her constructive discharge.

136. The harassment that AMF inflicted upon THILL was sufficiently severe and pervasive to alter the terms and conditions of her employment with AMF and create a discriminatorily abusive working environment, such that THILL felt physically threatened.

137. The conduct inflicted upon THILL was so severe or pervasive that it created an environment where a reasonable person would find it hostile or abusive.

138. THILL perceived the work environment at AMF as abusive.

139. The harassment occurred frequently, was humiliating, and unreasonably interfered with THILL's ability to perform her job as an accountant.

140. AMF is liable because its supervisory personnel was responsible for the discriminatory actions complained of, which actions were in violation of law, and AMF took no corrective action to stop and/or prevent said harassment.

141. As a direct and proximate result of AMF's conduct and its employees' actions, THILL has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including group health insurance, life insurance, and disability insurance, all of which she would have continued to receive had she not been unlawfully terminated.

142. THILL has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ASHLEY N. THILL, demands judgment against Defendant, AMERICAN METAL FABRICATORS, INC., and requests the following relief:

1. Enter judgment in favor of THILL for AMF's violations of Title VII and the FCRA;
2. Award THILL actual damages suffered;
3. Award back pay and value of lost employment benefits to THILL;
4. Award front pay to THILL for the time she would have worked absent AMF's discriminatory treatment;

5. Enter judgment in favor of THILL for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress THILL has suffered and continues to suffer;

6. Award THILL punitive damages;

7. Award THILL all costs and reasonable attorney's fees incurred in connection with this action;

8. Award prejudgment interest on all monetary recovery obtained;

9. Issue an injunction permanently enjoining AMF, its officers, agents, employees, assigns and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of gender; and

10. Grant such additional or alternative relief as may appear to this Court to be just and equitable.

### JURY TRIAL DEMAND

Plaintiff, ASHLEY N. THILL, demands a trial by jury on all issues so triable.

Dated July 21, 2021.

        **Sconzo Law Office, P.A.**
        3825 PGA Boulevard, Suite 207
        Palm Beach Gardens, FL 33410
        Telephone: (561) 729-0940
        Facsimile: (561) 491-9459

        By: **/s/ *Andrea Sconzo***
        ANDREA C. SCONZO, ESQUIRE
        Florida Bar No.: 0105578
        SAMANTHA L. SIMPSON, ESQ.
        Florida Bar No. 1010423
        **Primary Email:** andrea@sconzolawoffice.com
        **Primary Email:** samantha@sconzolawoffice.com